UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| FERRELL MOBILE HOMES, INC., ) | |
| RIVER CITY MOBILE HOMES SALES,) | |
| INC. d/b/a MONTY's MOBILE HOMES ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:17-cv-00065-SNLJ |
| ) | |
| CHAMPION HOME BUILDERS, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant's motion for summary judgment (#43) that has been fully briefed by the parties.

**I.  BACKGROUND**

The parties do not dispute the majority of the underlying facts.

Defendant Champion Home Builders, Inc. is a manufacturer of mobile homes. Plaintiffs Ferrell Mobile Homes, Inc. and River City Mobile Homes Sales, Inc. d/b/a Monty's Mobile Homes are family-owned mobile home dealerships. Champion sells a variety of mobile homes of various qualities—entry-level, mid-level, and high-end—using different monikers to differentiate them, such as the "Dresden" line and the "Benton" line.

Before and during 2015, the mid-level Dresden line was being sold through various dealers in the southern Missouri region, including Pioneer Manufactured Homes. Champion then decided to expand its operations, creating the entry-level Benton line of

1

homes for sale throughout the Midwest. Marvin Shell, a salesperson at Champion, undertook to identify potential dealers for the Benton line and, in March 2016, met with Glynn Ferrell, president and owner of plaintiffs, to discuss a potential business agreement. The two discussed selling the Benton line in the Missouri region; however, Ferrell noted his concern about Champion's existing relationship with Pioneer for the Dresden line within that same area. Shell assured Ferrell that the Benton line would not be offered to Pioneer.

On June 2, 2016, Shell e-mailed a dealer application to Ferrell. This application was completed and returned to Champion on or about June 6, 2016. Champion understood there to be an agreement between the parties upon full execution of the application by both sides, and began a search for additional dealers for other Midwest areas as well. In July 2016, Ferrell visited the factory where the Benton line was being built. During the visit, Ferrell reviewed a prototype and made several comments and suggestions about potential improvements—such as rearranging certain fixtures, offering additional color options, and including additional windows. At the conclusion of the visit, Ferrell ordered two homes for display on plaintiffs' lots.

The parties dispute the facts after the 2016 factory visit. Champion alleges Pioneer and other area dealers learned of Champion's agreement with plaintiffs and, apparently feeling uncomfortable about plaintiffs' aggressive business tactics, threatened to end their relationship with Champion if it did not terminate the agreement it had with plaintiffs. Champion explains it terminated the agreement with plaintiffs after "struggling" with what it should do. Champion orally notified Ferrell of its intention to terminate on

September 19, 2016. A text message was sent on September 20, 2016, that notified Ferrell of the cancellation of any pending purchase orders for Benton line homes effective immediately.

Plaintiffs agree with how and when Champion attempted to terminate their relationship, but dispute why it did so and the effect it had. Plaintiffs assert that in January 2016, three months prior to the March 2016 visit between Shell and Ferrell, Champion's president, Mark Yost, told Pioneer's president, William Beggs, that Pioneer would be the exclusive dealer of the Benton line in the Missouri area. Thus, according to plaintiffs, Champion defrauded plaintiffs through the use of false promises into divulging "confidential" and "proprietary" information regarding the entry-level mobile home market in the Missouri region. Plaintiffs explain that Champion used this information in improving and revising its Benton line to gain a competitive advantage. Plaintiffs stress the fact that Champion's version of what happened is false in that Beggs adamantly denied he or anyone at Pioneer contacted Champion to complain about plaintiffs. In fact, Beggs testified at his deposition that no one at Pioneer knew that plaintiffs even had a deal with Champion. Plaintiffs also stress the fact that Champion's oral notice of termination, and follow-up text message, were inadequate to provide the sixty days' written notice of termination required under their agreement.

In view of these circumstances, plaintiffs filed a six-count complaint asserting: Count I—breach of contract on the dealership agreement; Count II—breach of contract on the purchase orders; Count III—promissory estoppel; Count IV—unjust enrichment / quantum meruit; Count V—fraudulent misrepresentation; and Count VI—negligent

misrepresentation. During the parties' briefing, plaintiffs appear to have abandoned Counts II and III and, therefore, Champion's motion will be granted on those counts. Accordingly, this Court will address Champion's arguments with respect to the remaining Counts I, IV, V, and VI.

## II. ANALYSIS

### A. Standard of Review

Summary Judgment involves the "threshold inquiry of determining whether there is a need for trial." *Walls v. Petrohawk Properties, LP*., 812 F.3d 621, 624 (8th Cir. 2015) (*quoting Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986)). In other words, summary judgment is appropriately granted if, in viewing the record in a light most favorable to the nonmoving party, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). An issue of fact is genuine when "a reasonable jury could return a verdict for the nonmoving party" on the question. *Woods v. DaimlerChrysler Corp*., 409 F.3d 984, 990 (8th Cir. 2005) (*quoting Anderson,* 477 U.S. at 248). The movant bears the initial burden of establishing both the existence of a genuine issue of material fact and his or her entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this initial burden is met, the nonmoving party must then set forth, by affidavit or other evidence, specific facts showing that a genuine issue of material fact exists. *Grey v. City of Oak Grove, Mo.,* 396 F.3d 1031, 1034 (8th Cir. 2005); FED. R. CIV. P. 56(e). It is not enough that the parties have a factual dispute between them; rather, "the dispute must be outcome determinative under prevailing law." *Id*.

## B. Count I—Breach of Contract

In Count I, plaintiffs claim Champion breached the "dealership agreements," which permits "either party [to] terminate [their] relationship, with or without cause, upon 60 days written notice." (#44-11, #44-12). It is Champion's position that, because the parties have an at-will agreement terminable by either side for any reason, plaintiffs are limited to recoupment damages. The recoupment doctrine is a "limitation on the general rule that where a … distributorship agreement says nothing about duration and does not specifically deal with termination, the contract is terminable at the will of either party."[1] *Armstrong Bus. Servs. V. H & R Block*, 96 S.W.3d 867, 879 (Mo. App. W.D. 2002). The doctrine thus allows, even where no breach has occurred,

> compensation on a quantum meruit basis where the agent, induced by his appointment, has in good faith incurred expense and devoted time and labor in the matter of the agency without having had a sufficient opportunity to recoup such expenditures from the undertaking.

*Id.* (quoting *Ernst v. Ford Motor Co.*, 813 S.W.2d 910, 919 (Mo. App. W.D. 1991)). Champion suggests that because it did not breach the agreement—because it was entitled to terminate the agreement on 60 days' notice—plaintiffs are limited to recoupment damages, of which, Champion argues, plaintiffs have none.

Plaintiffs deny that they are seeking recoupment damages. Instead, plaintiffs insist they are entitled to lost profits because Champion did, indeed, breach the 60-day written termination notification provision. To be sure, Missouri law permits a plaintiff to seek lost profits specifically due to the breach of a notification requirement. *See, e.g.*, *Sun*

---

[1] It appears the *Armstrong* court's reference to "termination" deals with the absence of any cause or reason for termination of a contract. Here, the contract addresses notification with respect to termination, but the contract is still an at-will contract.

*Aviation, Inc. v. L-3 Communications Avionics Sys., Inc.*, 533 S.W.3d 720, 730 (Mo. 2017) (permitting lost profit damages due to a breach of the statutory 90-day notice requirement); *Machine Maintenance & Equipment Co., Inc. v. Cooper Indus., Inc.,* 634 F. Supp. 367, 371 (E.D. Mo. 1986) (applying Missouri law and recognizing lost profit damages can be sought in breach of written distributor agreement with 90-days' notice).

Champion argues, however, that, should the Court allow plaintiffs to seek lost profits for their breach of contract claim, the Court should limit plaintiffs to recovery of profits lost only during the 60-day notice period. This Court agrees. *See, e.g.*, *Mach. Maint. & Equip. Co.*, 634 F. Supp. at 371. *Machine Maintenance* is instructive, as it held "plaintiff can only recover damages resulting from or incidental to the alleged breach, which under the facts of this case is not the termination itself, but rather the failure to provide the notice called for by the terms of the agreement." *Id.* Plaintiffs could have had no expectation that the agreement would extend past 60 days. Accordingly, to the extent plaintiffs can show Champion breached the 60 days' written notice of termination requirement, plaintiffs' contractual damages will be limited to the 60 days contemplated by the agreement.

### C. Count IV—Unjust Enrichment / Quantum Meruit

As an initial matter, the Court notes that unjust enrichment and quantum meruit are separate claims with differing elements under Missouri law. *See Central Parking Sys. of Missouri, LLC. v. Tucker Parking Holdings, LLC.*, 519 S.W.3d 485, 498 (Mo. App. E.D. 2017) (comparing the respective elements of unjust enrichment and quantum meruit) The parties never address this point, but instead proceed to argue about the

applicability of the specifics elements of unjust enrichment. Thus, the Court limits its analysis to that specific claim.

The elements for unjust enrichment are: (1) a benefit conferred by one party on another; (2) appreciation or recognition by the receiving part of the fact that what was conferred was a benefit; and (3) acceptance and retention of the benefit that would render that retention inequitable. *Hoeper v. Liley*, 527 S.W.3d 151, 161 (Mo. App. W.D. 2017); *Rental Co, LLC. v. Carter Group, Inc.*, 399 S.W.3d 63, 66 (Mo. App. W.D. 2013); *Cridlebaugh v. Putnam Cty. State Bank of Milan*, 192 S.W.3d 540, 543 (Mo. App. W.D. 2006).[2] Champion's sole argument is that it did not "recognize" or "appreciate" that the information given to it by plaintiffs—allegedly confidential and proprietary information divulged during a tour of Champion's factory—was beneficial. In support, Champion maintains that its own personnel could not recall most of the information that was shared by plaintiffs and notes there is no evidence that any such information was actually used by Champion.

What it means to "recognize" or "appreciate" a benefit conferred is that there must be some proof that defendant actually used the information being conferred. *See Hoffmeister v. Kranawetter*, 407 S.W.3d 59, 62 (Mo. App. E.D. 2013) (holding husband liable for unjust enrichment where, despite not knowing his wife embezzled money, it could nonetheless be shown that husband used it); *Earley v. Wachovia Bank, N.A.*, 361

---

[2] Unjust enrichment has been formulated in somewhat differing ways under Missouri law. In recent decisions by the Missouri Court of Appeals for the Eastern District, the elements of unjust enrichment are: (1) that the defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; and (3) that it would be unjust to allow the defendant to retain the benefit. *Central Parking Sys. of Missouri, LLC.*, 519 S.W.3d at 498; *Day v. Hupp*, 528 S.W.3d 400, 413 (Mo. App. E.D. 2017); *Sparks v. PNC Bank*, 400 S.W.3d 454, 460 (Mo. App. E.D. 2013).

Fed.Apx. 699, 700 (8th Cir. 2010) (applying Missouri law and finding plaintiff's unjust enrichment claim failed where there was no evidence that his confidential information was used by defendant to its advantage); *Howard v. Turnbull*, 258 S.W.3d 73, 76 (Mo. App. W.D. 2008) (finding the appreciation component satisfied where plaintiff showed his payment on the defendant's behalf was used to reduced sums owed); *Dewey v. American Stair Glide Corp.*, 557 S.W.2d 643, 649 (Mo. App. W.D. 1977) (noting the measure of damages for the misappropriation of ideas or information based on a theory of unjust enrichment is the "reasonable value of the use of the device" and/or the "reasonable value of the services rendered").

It is plaintiffs' theory that Champion did, in fact, use much of the information—either confidential or proprietary—offered to it by plaintiffs during the factory visit and prototype viewing. Plaintiffs also argue this information was unjustly obtained through Champion's use of false pretense in promising both plaintiffs and Pioneer that they would be the exclusive dealer of the Benton home line.

Champion denies these points. It denies the allegations of false pretense. It denies, for example, that the option packages it offers on the Benton line were based on plaintiffs' feedback, arguing instead that such packages are based on those created for previous entry-level home models. And it denies that any special features found in plaintiffs' purchase orders were the result of a system-wide adoption of plaintiffs' feedback, but were instead merely a reflection of the made-to-order process Champion uses to incorporate plaintiffs' feedback as to their purchases only.

8

Ultimately, the parties argue over whether Champion actually used and enjoyed (and, thus, "recognized" or "appreciated") the information supplied by plaintiffs in a way that would be unjust. Did Champion "use" plaintiffs' information—information plaintiffs argue is uniquely held by them alone in that it is a reflection of their customer's historical preferences—as free market research? That question is a factual one, vigorously disputed by the parties, which is to be decided by a jury and not this Court.

Accordingly, the Court will deny Champion's motion for summary judgment as it relates to Count IV.

### D. Counts V & VI—Fraudulent and Negligent Misrepresentation

The parties agree the elements for a fraudulent misrepresentation claim are:

> (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury.

*Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 131–32 (Mo. *banc* 2010). Plaintiffs allege Champion falsely told them they would have the exclusive right to sell the Benton line when, in fact, Champion planned to distribute them through Pioneer all along. In reliance on that representation, plaintiffs say they disclosed their thoughts and suggestions on the Benton prototype so that it would sell in their market. Then, plaintiffs allege Pioneer was allowed to sell the Benton homes using the information plaintiffs were tricked into offering.

9

Champion contends the distributorship agreement, which plaintiffs agree did not provide for an exclusive arrangement, forecloses any fraud claim because plaintiffs could not have relied on Champion's earlier statements. The written application, which both parties construe as being part of the agreement, explicitly states that

> MANUFACTURER IN NO WAY INTENDS TO IMPLY THAT IT IS OFFERING, OR THAT IT WILL GRANT AN EXCLUSIVE TRADE TERRITORY OR BRAND DESIGNATION IF APPROVED.

Although plaintiffs acknowledge the written agreement "disclaim[s] any such right" to an exclusivity arrangement, they do not address Champion's argument that the agreement forecloses plaintiffs' reliance on alleged earlier statements by Champion. Nor do plaintiffs argue the agreement is ambiguous. Nor do they make a claim for fraud in the inducement which might otherwise void the distributorship agreement altogether. Instead, plaintiffs argue a promise not to give Pioneer a distributorship on the Benton line is different from a promise of exclusive trade territory or brand designation. Specifically, plaintiffs state that

> Plaintiffs have never claimed that Champion promised them an exclusive trade territory or brand designation. Indeed, the agreements at issue disclaim any such right. But Plaintiffs do allege—and the evidence confirms—that Champion promised Plaintiffs that they would serve as the dealer for the Benton line of homes to the exclusion of their existing dealer, Pioneer.

That argument makes no sense. There is no meaningful difference between a promise of exclusivity and the promise that plaintiffs' regional competitors would not sell the same product.

Plaintiffs' fraud claim, then, cannot be sustained absent reasonable reliance. Plaintiffs' negligent misrepresentation claim fails for the same reason. *See Kesselring v. St. Louis Group, Inc.*, 74 S.W.3d 809, 813 (Mo. App. E.D. 2002) (noting that fraudulent and negligent misrepresentation claims share relevant elements in common). Summary judgment will be granted to Champion on Counts V and VI.

### III. CONCLUSION

For the forgoing reasons,

**IT IS HEREBY ORDERED** that defendant Champion's motion for summary judgment (#43) will be **GRANTED IN PART** on Count I of the amended complaint (#32). Plaintiffs may proceed to trial on Count I; however, plaintiffs' contractual damages will be limited to those damages resulting from or incidental to the failure of Champion to provide 60 days' written notice of termination.

**IT IS FURTHER ORDERED** that defendant Champion's motion for summary judgment (#43) will be **GRANTED** on Counts II and III of the amended complaint (#32) in light of the fact that plaintiffs have voluntarily abandoned these claims.

**IT IS FURTHER ORDERED** that defendant Champion's motion for summary judgment (#43) will be **DENIED** on Count IV of the amended complaint (#32). Plaintiffs may proceed to trial on Count IV.

**IT IS FURTHER ORDERED** that defendant Champion's motion for summary judgment (#43) will be **GRANTED** on Counts V and VI of the amended complaint (#32). Counts V and VI are dismissed.

So ordered this 15th day of October 2018.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE